## UNITED STATES v. ONE 1941 FORD COACH AUTOMOBILE, MOTOR NO. 18—6247535.

### Civil No. 47.

District Court, W. D. Virginia, at Abingdon.
Dec. 22, 1941.

F. S. Tavenner, Jr., U. S. Atty., of Woodstock, Va., for the Government.

Arthur F. Kingdon, of Bluefield, W. Va., for claimant, Universal Credit Co.

BARKSDALE, District Judge.

#### Findings of Fact.

The 1941 Ford Coach Automobile, Motor No. 18—6247535, here in controversy, was seized on June 6, 1941, by a Federal and State Officer in Wythe County in this District with one hundred gallons of untaxpaid liquor thereon. The car, at the time of its seizure, was in the possession of one Herman Willis. On April 3, 1941, upon a purchase order signed by Mrs. Christenia Willis and Herman Willis, this car was purchased from Elkhorn Motor Company of Keystone, W. Va. At that time, Christenia Willis and Herman Willis, although not married, were living together as man and wife at Northfork, W. Va., which is nearby, and constitutes practically one community with, Keystone, W. Va. In the purchase of this car, a part of the consideration therefor was a used Ford car which Christenia Willis had purchased from Galegher Motor Company of Huntington, W. Va., in August, 1940. In the purchase of the car from Galegher Motor Company in Huntington, Christenia Willis' conditional sales contract securing deferred payments was assigned to the Huntington branch of Universal Credit Company, the claimant here. The Universal Credit Company at that time investigated Christenia Willis and found her credit and character to be good. It does not

clearly appear whether an investigation was then made as to her record or reputation for violating the liquor laws, but in any event she had no record or reputation in Huntington, or elsewhere, nor does it appear from the evidence that she was in any way connected with the liquor business, at that time. Subsequently, in January, 1941, Christenia Willis came to Northfork, W. Va., where she lived with Herman Willis as his wife until the time of the seizure of the automobile here in question. During this period, they lived together in the same room at a hotel, and although neither one was employed, they appeared well supplied with money for payment for their food and room rent. Although she had taken the name of her ostensible husband, Christenia Willis' real name was Christenia Waugh, and she came from Pulaski, Virginia, where she had also lived with Herman Willis as his wife. In the purchase of the automobile here in question, Herman Willis not only signed the purchase order, as did Christenia Willis also, but he made the arrangements for the transaction and Christenia did not have sufficient income to pay for the new automobile. The Elkhorn Motor Company made no investigation of either Herman Willis or Christenia Willis, but promptly applied to Universal Credit Company at Bluefield, W. Va., to have it purchase the conditional sales contract covering the deferred payments. The Elkhorn Motor Company would have refused to make the sale if Universal Credit Company had been unwilling to purchase the conditional sales contract without recourse on it. The Universal Credit Company, claimant here, is a finance company which operates independently of the Ford Motor Company, but whose principal business is the purchase of such contracts from Ford dealers and collection thereof. The conditional sales contract offered by Elkhorn Motor Company to Universal Credit Company at Bluefield, was signed only by Christenia Willis, and the Elkhorn Motor Company did not inform Universal Credit Company that Herman Willis had signed the purchase order or that he had any interest in, or connection with, the transaction. The Universal Credit Company, through its Bluefield branch, purchased the contract in due course of business, and there was nothing in or about the conditional sales documents themselves, or surrounding circumstances known to the claimant, to put it on notice that the ostensible purchaser was not the real purchaser. The Universal Credit Company made no investigation of Herman Willis whatever, and made no further investigation at that time of Christenia Willis, but relied upon the report of the investigation made of her in August, 1940, by its Huntington branch, when the conditional sales contract covering her purchase of the car from Galegher Motor Company in Huntington was assigned to it. Payments were still being made on this contract at the time of the second automobile purchase.

At this time, that is, on or about April 3, 1941, Herman Willis had an extensive record and reputation of violating the liquor laws in Pulaski, Virginia, and he had the reputation of violating the liquor laws in the community in which he lived, i.e., Keystone-Northfork, W. Va. Christenia Willis had neither a record nor reputation of violating the liquor laws anywhere. The Elkhorn Motor Company was put upon notice by the circumstances of the transaction that the purchase of the car, here in controversy, from it was for the use and benefit of Herman Willis, although title to the car was taken in the name of Christenia Willis. However, Elkhorn Motor Company did not communicate such knowledge to claimant. The fact that Christenia Willis, on April 3, 1941, no longer resided in Huntington, but then resided at Northfork, McDowell County, W. Va., was made known to claimant by the address given by her below her signature on the conditional sales contract purchased by claimant. Any reasonable investigation of Christenia Willis would have disclosed that she and Herman Willis were living together at a hotel in Northfork, W. Va., without employment, but well supplied with money, that Herman Willis was reputed to be in the liquor business, and therefore that the automobile here in question would, in all probability, be used in the illicit liquor traffic.

I further find that the unpaid balance due to the claimant, Universal Credit Company, under the lien of its conditional sales contract covering the purchase of the automobile here in question, amounts to $566.10.

### Conclusions of Law.

The claimant here, Universal Credit Company, seeks remission of a forfeiture under the provisions of Title 27 U.S.C.A. § 40a. In subsection (b) of this statute, three conditions precedent are enumerated.

I conclude as to condition (1) that claimant has an interest in the vehicle here in controversy, by virtue of its lien, which it acquired in good faith.

However, it does not appear to me that the condition precedent, (b) (2), has been complied with, for the following reasons:

Although in his brief claimant's counsel cites numerous cases, he relies principally upon United States v. One Ford Coach, 307 U.S. 219, 59 S.Ct. 861, 83 L.Ed. 1249. This was a case where, in the purchase of an automobile, one brother, who had a previous record and reputation for violating both state and federal laws relating to liquor, made the purchase in the name of his brother, who had no such reputation. In other words, the purchaser, for his own protection, made use of a straw man to act as the ostensible purchaser. When the conditional sales contract was assigned to a finance company, the claimant in the case, it made a reasonable investigation of the straw man purchaser and found that he had no record or reputation as a violator of liquor laws and that he had a good reputation in the community where he lived. Claimant made no investigation of the real purchaser; and neither the documents themselves, nor other surrounding circumstances, indicated that any person other than the ostensible purchaser had any right under the contract of sale. It made no investigation whatever from the dealer, or otherwise, to determine who was the real purchaser. The Court definitely held, in the majority opinion, that under such circumstances, under the statute, no duty devolved upon the claimant to investigate the real purchaser or to make an investigation to determine who was the real purchaser. This same conclusion was reached by the Circuit Court of Appeals for the Fourth Circuit in C. I. T. Corp. v. United States, 89 F.2d 977, even though the fact of the straw man purchase was known to the dealer making the sale.

■ In the instant case, I have found as a fact that the dealer here was put upon notice that Herman Willis, a man of bad reputation, was the real purchaser of the automobile in controversy. However, I have also found that this knowledge was not brought home to the finance company, claimant here, to whom the conditional sales contract was assigned, and further, that there were no surrounding circumstances to indicate a straw man purchase to the claimant. Therefore, applying the doctrine of United States v. One Ford Coach, supra, it must be here concluded that no duty devolved upon the claimant to investigate Herman Willis, the real purchaser.

■ However, a consideration of United States v. One Ford Coach, supra [307 U.S. 219, 59 S.Ct. 869, 83 L.Ed. 1249], clearly shows that this case holds "that Congress [in the enactment of the statute] intended a reasonable inquiry concerning the bootleg risk should be made in connection with the investigation of financial responsibility"; and that the statute "was intended to prevent remission to a claimant who had failed to inquire when he should have done so, to one chargeable with willful negligence or purpose of fraud.

■ In other words, my conception of the holding in United States v. One Ford Coach, supra, is that where the fact of a straw man purchase does not appear, or is not suggested, to a finance company assignee, from either the sales documents or surrounding circumstances, the finance company assignee is under no duty to investigate the real purchaser, nor to make an investigation to determine who the real purchaser was; but that it is the duty of a finance company assignee to make a reasonable investigation of the purchaser whose name appears in the sales documents, with a view both to his financial responsibility and the "bootleg risk".

In the case of C. I. T. Corp. v. United States, 86 F.2d 311, the Court of Appeals for the Fourth Circuit held that in the case of a straw man purchase, where, in the investigation of the ostensible purchaser, some fact or circumstance was made known to the finance company assignee which should have put it on notice of the probable presence of the "bootleg risk", and it failed to make further reasonable investigation which would have disclosed the presence of the "bootleg risk", remission would be denied.

■ Applying these principles to the instant case, it seems to me that remission must be denied because the claimant here failed to make a reasonable investigation of the ostensible purchaser, Christenia Willis, and chose to "shut its eyes to facts which in the course of the transaction came to its attention". 86 F.2d page 314. Claimant here made a careful investigation of Christenia Willis in August, 1940, and found that she resided in Huntington, W. Va., bore a good reputation, and was gainfully employed in domestic service for highly reputable people. However, in April, 1941, when the transaction here in question took place, the claimant made no further investigation, although, from the very conditional sales document it-

self, it was brought home to the claimant that Christenia Willis no longer resided in Huntington, but then resided at Northfork, W. Va. . It seems to me beyond question that this change of residence from a populous city to a small mining community remote therefrom, was a circumstance appearing to the claimant to which it could not reasonably "shut its eyes". In my opinion, with this change of habitation brought home to it, it became claimant's bounden duty to make further reasonable inquiry as to Christenia Willis, with a view both to her financial responsibility and the "bootleg risk". Any investigation at all would have revealed that she had no employment and was living in a hotel as the wife of a notorious bootlegger, well supplied with money, but having no legitimate employment.

I am therefore of the opinion that the claimant here has failed to comply with the requirements of the statute, and its petition for remission should be denied at its costs. An order will be entered accordingly.